**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ASHLEY ADAMS, | : | NO:  1:14-cv-02067 |
| Plaintiff | : | |
| v. | : | |
| PEPCO HOLDINGS, INC. | : | |
| Defendant | : | JURY TRIAL DEMANDED |

## **COMPLAINT**

**Jurisdiction and Venue:**

1. This is an action for equitable relief and damages, to secure protection of and to redress deprivation of rights secured by Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e et seq, the Family and Medical Leave Act, 29 U.S.C. §2601 et. seq., and Title VIII of the Sarbanes Oxley Act, 18 U.S.C. §1514A(a), as amended (SOX).

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and 42 U.S.C. §2000e-5 due to claims arising under the laws of the United States.

3. Venue is proper in this district since the discriminatory acts giving rise to the claim occurred in this district, as required by 42 U.S.C. §2000e-5(f)(3).

**Parties:**

4. Plaintiff, Ashley Adams is an adult woman who resides in Bear, New Castle County, Delaware.

5. Defendant, Pepco Holdings, Inc. (PHI) is a Delaware Corporation with its executive offices at Suite 1300, 701 Ninth Street NW, Washington, DC.

6. PHI is an energy delivery company serving approximately two million customer accounts in Delaware, the District of Columbia, Maryland, and New Jersey through its wholly owned subsidiaries Atlantic City Electric, Delmarva Power, Pepco and Pepco Energy Services.

7. PHI is a publicly traded company with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, 15 U.S.C. §78(l) and is subject to the reporting requirements of Section 15(d), 15 U.S.C. §78o(d).

8. PHI was engaged in a business effecting commerce and had more than 20 employees at all relevant times from 2009 until the present.

**Administrative Prerequisites to Suit:**

9. The plaintiff filed a charge alleging sex and age discrimination with the Equal Employment Opportunity Commission (EEOC) on April 24, 2014. A true and correct copy of said charge is attached hereto as Exhibit "1".

10. A copy of the charge was filed with the Delaware Department of Labor pursuant to the procedures of the EEOC. A true copy of the EEOC's letter notifying the plaintiff that this would be done is attached hereto as Exhibit "2".

11. The EEOC issued a Notice of Right to Sue on September 11, 2014. A true and correct copy of said Notice is attached hereto as Exhibit "3".

12. In addition, the plaintiff filed a complaint with the U.S. Department of Labor, Occupational Safety and Health Administration (OSHA), alleging unlawful retaliation, on April 4, 2014. A true copy of the said complaint is attached hereto as Exhibit "4", and a copy of OSHA's acknowledgment of the said filing is attached hereto as Exhibit "5".

13. More than 180 days have passed since the said filing and the Secretary of Labor has issued no decision addressing the plaintiff's complaint.

**<u>Facts:</u>**

14. Plaintiff was employed by PHI beginning June 25, 2005 as Senior Regulatory Affairs Analyst.

15. The Plaintiff was, at all relevant times, qualified for her position with PHI.

16. One of Adams's responsibilities was regulatory Sarbanes Oxley (SOX) coordinator. In this capacity, she reported directly to the Vice President for Regulatory Affairs and to PHI's SOX Manager, but not to her immediate supervisor and Performance Accountability System (PAS) rater. This segregation of duties was an internal accounting control procedure designed to insure reasonable assurance regarding the prevention or timely detection of unauthorized acquisition, use or disposition of PHI's assets that could have a material effect on its financial statements, as contemplated by 17 C.F.R. §240.13a-15(f), 15 U.S.C. §78m(b)(2)(B) and 15 U.S.C. §15(b)(5).

17. During her employment until 2011, Adams received favorable performance evaluations and bonuses, and experienced no significant problems in her relationship with her managers, including her supervisor and PAS rater.

18. Adams' supervisor and PAS rater was removed in early 2012 due to problems with oversight of a recordkeeping system called the Standard Offer Service, which reconciles calculations of electricity purchases by PHI with its charges to its own customers. These oversight problems were implicated in an error of approximately $50,000,000 in PHI's financial reporting. Adams had been aware in advance of the

probability of this termination, due to participation in conferences with PHI's external auditors at PriceWaterhouseCoopers and PHI's SOX Manager, but had not disclosed it to her PAS rater pursuant to their instructions.

19. Thereafter, Susan DeVito replaced Adams's supervisor in his job position, and Carl D'Adamo became Adams's PAS rater in an intermediate managerial position.

20. During March 2012, Adams observed an incident of inaccurate customer billing and reported it to The Vice President for Regulatory Affairs and the SOX Manager. This resulted in a correction and refund for the customer of a substantial amount, approximately $18,000.

21. Thereafter, both Ms. DeVito and Mr. D'Adamo repeatedly told Adams that she was not to inform PHI's SOX Regulatory Compliance team of issues she noticed without first discussing the issues with Ms. DeVito and Mr. D'Adamo.

22. Adams reported theses instructions to the SOX Manager and the Vice President for Regulatory Affairs and the SOX Manager instructed her that she could not be required to delay her reporting to the SOX Compliance team.

23. From then until October 23, 2013, Ms. DeVito and Mr. D'Adamo displayed bias and hostility toward Adams because of her above described protected conduct, including:

    a. an overall rating of "2," and a rating of "3" rather than "4" on her SOX goal on her PAS, resulting in no merit pay increase for 2013, whereas most employees received merit pay raises;

b.   continued and repeated criticisms for "communication issues," which criticisms were sometimes completely false and often grossly distorted; and

c.   attempting to deny her compensation for overtime worked on March 6, 2013, despite her clear entitlement thereto.

24.   On April 22, 2013, Mr. D'Adamo placed Adams on a Performance Improvement Plan (PIP), with an associated task list for completion by July 22, 2013.

25.   Thereafter, Ms. DeVito and Mr. D'Adamo continued to harass Adams, including:

a.   On April 30, 2013, Mr. D'Adamo denied a request for a one-day training seminar, although 24 hours of annual training was required as a qualification for her job;

b.   removing Adams from "storm duty" after eight continuous years of having that assignment;

c.   On June 6, 2013, Mr. D'Adamo told Adams she would have to make up time she had missed from work for an approved medical appointment; and

d.   On June 7, 2013, Mr. D'Adamo changed her work shift hours.

26.   On June 12, 2013, Adams became sufficiently disabled by the stress created by these job conditions as to need and take a medical leave of absence, which PHI approved under the FMLA.

27.   Concerned about falling behind on her work, Adams returned to work on June 27, 2013, although not fully recovered.

28.   On that same date, June 27, 2013, Adams called Mr. D'Adamo for his instructions concerning whether she should attend an "all-hands" meeting or attend to her backlogged work, but received no guidance and elected to attend to the work.

29.   On June 28, 2013, Ms. DeVito suspended Adams from work for not attending the "all-hands" meeting, resulting in Adams's relapse and return to medical leave of absence.

30.   As a result, Adams's health condition relapsed so that, when Frank Burris of PEPCO's Human Resources Department called her on July 17, 2013 to tell her that her suspension was removed and she could return to work, she was unable to do so, and returned to an approved FMLA leave.

31.   On July 9, 2013, through a letter from her attorney, Adams complained of the efforts of Mr. D'Adamo and Ms. DeVito to undermine her employment and engineer her termination.  A true copy of the said letter is attached hereto as Exhibit "6".

32.   Adams returned to work from medical leave on July 29, 2013.  She was immediately told by Ms. DeVito that she could not represent PHI in testimony to be provided to the Delaware Public Utility Commission concerning the Environmental Surcharge Rate (ESR), making it easier for PHI to terminate her because the employee who provided such testimony would have to do so in November 2013.

33.   Also on July 29, 2013, however, Ms. DeVito instructed Adams that she was still to complete the documentation for the ESR and separate Gas Cost Rate (GCR) filings by August 28, 2013, an accelerated schedule, which would interfere with her ability to complete the task list she had been given under the PIP, the completion date for which was changed to September 10, 2013.

6

34. On August 12, 2013, Ms. DeVito and Mr. D'Adamo conducted a mid-year review of Adams, in which Ms. DeVito included written comments that were objectively demonstrated as inaccurate, such that she changed them.  Mr. D'Adamo then added a negative comment that a calendar of critical due dates should have been completed by Adams at a time she was on FMLA leave.

35. On August 16, 2013, Mr. D'Adamo issued the corrected mid-year written review, still with an overall rating of "2", a negative evaluation.

36. On August 23, 2013, Adams contacted her doctor for an emergency appointment, and was given one for that same day, after which she immediately notified Mr. D'Adamo.  Within thirty (30) minutes, she was summoned to Ms. DeVito's office, where Ms. DeVito and Mr. D'Adamo criticized her for failure of communication because she had not notified them of the appointment before it was made.

37. On August 27, 2013, the day before the ESR and GCR filings were to be completed, Mr. D'Adamo questioned Adams as to whether she had sent out a communication plan and whether it had been charged, demanding a single yes or no response, to which Adams responded that the answer was "yes and no change," after which Mr. D'Adamo berated her for failing to comprehend the question and claimed it allowed for a one-word answer.

38. After having specifically told Adams not to worry about the PIP and its task list during August while she had to complete the ESR and GCR filings, on September 3, 2013, Mr. D'Adamo demanded an update on the status of the PIP and, on September 5, 2013, told Adams the PIP had to be completed by September 10, 2013.

39. On September 6, 2013, Mr. D'Adamo again criticized Adams for not providing an update on the PIP, and also told her it had not been his fault she had been ill and on leave, but she still had to make up the work that had fallen behind, including the PIP task list.

40. On September 12, 2013, Adams was declared to have failed the PIP.

41. Mr. D'Adamo pointedly questioned Adams about scheduled doctor's appointments on September 16, September 20, October 2, and October 14, 2013, refusing to respond that she was approved to attend the ones on September 10, October 2 and October 14 until the same day as the appointment, sometimes only minutes before Adams needed to leave.

42. On October 23, 2013, Adams was terminated.

43. As a direct and proximate result of the defendant's said conduct, the plaintiff has suffered serious injury including, but not limited to, loss of earnings and earning potential, dramatically increased costs for commuting and lodging, emotional distress and embarrassment.

44. The defendant's conduct was outrageous, willful, wanton, and undertaken with reckless indifference to the plaintiff's legal rights.

## CAUSES OF ACTION

## COUNT I

## SARBANES OXLEY ACT (SOX)

45. Plaintiff incorporates paragraphs 1 through 44 by reference as if fully set forth at length.

46. The plaintiff's report of the billing error in March 2012 was protected by 18 U.S.C. §1514A(a)(1)(c).

47. The subsequent efforts of DeVito and D'Adamo to direct Adams to report to her before doing so to the Vice President for Regulatory Affairs and SOX Manager were an effort to circumvent internal accounting controls in violation of 78 U.S.C. §78m(b)(5).

48. Adams's subsequent reports of those efforts at circumvention were, therefore, also protected by 18 U.S.C. §1514A(A)(1)(c).

49. The plaintiff believes, and therefore avers, that the harassment directed at her and her termination were, in whole or in determining part, in retaliation for her protected actions in 2011, March 2012 and July 9, 2013 because, inter alia, the hostility toward Adams, criticisms of her work and communication, and demands that she advise Ms. DeVito and Mr. D'Adamo of her actions with regard to her regulatory SOX coordination duties all began after her report in March 2012.

WHEREFORE, the plaintiff respectfully requests that this Honorable Court grant legal and equitable relief against defendant, including:

    a. a declaration that the conduct toward the plaintiff was unlawful;

    b. back pay with interest;

    c. front pay;

    d. compensatory damages in an amount greater than $300,000;

    e. attorneys' fees and costs of suit.

## COUNT II

## INTERFERENCE WITH RIGHTS UNDER FMLA

50. The plaintiff incorporates paragraphs 1 through 44 by reference as if fully set forth herein.

51. The defendant's harassment and termination of the plaintiff was an interference with her right to additional medical leave and in violation of 29 U.S.C. §2615(a)(1).

WHEREFORE, the plaintiff respectfully requests that this Honorable Court grant legal and equitable relief against defendant, including:

    a. a declaration that the conduct toward the plaintiff was unlawful;

    b. back pay with interest;

    c. front pay;

    d. an additional equal amount as liquidated damages;

    e. attorneys' fees and costs of suit.

## COUNT III

## RETALIATION FOR TAKING FMLA LEAVE

52. The plaintiff incorporates paragraphs 1 through 44 by reference as if fully set forth herein.

53. The defendant's harassment after June 12, 2013 and termination of the plaintiff were in retaliation for her taking medical leave in violation of 29 U.S.C. §2615(a)(2).

WHEREFORE, the plaintiff respectfully requests that this Honorable Court grant legal and equitable relief against defendant, including:

    a.    a declaration that the conduct toward the plaintiff was unlawful;

    b.    back pay with interest;

    c.    front pay;

    d.    an additional equal amount as liquidated damages;

    e.    attorneys' fees and costs of suit.

## COUNT IV

## DISCRIMINATION UNDER TITLE VII

54. Plaintiff incorporates paragraphs 1 through 44 by reference as if fully set forth herein.

55. The plaintiff believes, and therefore avers, that the reason given for the termination was a pretext, in whole or in part, for sex discrimination, because, <u>inter</u> <u>alia</u>;

    a.    a male employee, who had come to the Regulatory Department in the spring of 2011, ultimately replaced her;

    b.    while purporting to find Adams's work inadequate, Mr. D'Adamo nonetheless required Adams to work overtime to perform additional assignments; and

    c.    In December 2012, Mr. D'Adamo promoted the male employee to Lead Analyst and instructed Adams to place the male employee's name on work done by Adams so that the male employee could be presented as PHI's witness for Commission filings.

56. The defendant's harassment, termination and other adverse actions against the plaintiff were unlawful discrimination based upon her gender in violation of 42 U.S.C. §2000e-2.

WHEREFORE, the plaintiff respectfully requests that this Honorable Court grant legal and equitable relief against defendant, including:

    a.    a declaration that its conduct toward the plaintiff was unlawful;

    b.    back pay with interest;

    c.    front pay;

    d.    compensatory damages in an amount in excess of $300,000;

    e.    punitive damages;

    f.    attorneys' fees and costs of suit.

## COUNT V

## RETALIATION UNDER TITLE VII

57. The plaintiff incorporates paragraphs 1 through 56 by reference as if fully set forth herein.

58. The plaintiff believes, and therefore avers, that the reason given for her termination was motivated, in whole or in determining part, by her protected conduct on July 9, 2013.

59. The defendant's harassment thereafter, termination and other adverse actions were unlawful retaliation in violation of 42 U.S.C. §2000e-3(a).

WHEREFORE, the plaintiff respectfully requests that this Honorable Court grant legal and equitable relief against defendant, including:

    a.    a declaration that its conduct toward the plaintiff was unlawful;

    b.    back pay with interest;

    c.    front pay;

    d.    compensatory damages in an amount in excess of $300,000;

    e.    punitive damages;

    f.    attorneys' fees and costs of suit.

*/s/ James C. Bailey*

James C. Bailey (DC # 462391)
Michael S. Hollander (DC # 1015379)
BAILEY & EHRENBERG PLLC
1015 18th Street NW
Suite 204
Washington, DC  20036
T:  (202) 331-1331
F:  (202) 318-7071
jcb@becounsel.com
msh@becounsel.com

-and-

WILLIAM T. WILSON
(*pro hac vice* to be submitted)
MacELREE HARVEY, LTD.
Penna. Attorney I.D. No. 41793
17 West Miner Street, P.O. Box 660
West Chester, PA  19381-0660
(610) 436-0100

Attorneys for Plaintiff